UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Lee R.,                                                      Civ. No. 20-1989 (BRT)

      Plaintiff,

v.                                                           **MEMORANDUM
                                                             OPINION AND ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,[1]

      Defendant.

---

Edward C. Olson, Esq., Disability Attorneys of Minnesota; David F. Chermol, Chermol & Fishman LLC, counsel for Plaintiff.

Tracey Wirmani, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

      Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance and supplemental security income ("SSI") benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 24, 29.) For the reasons below, Plaintiff's motion is granted in part and denied in part, and Defendant's motion is denied.

---

[1]     Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is therefore substituted for Andrew Saul as the Defendant in this suit.

## BACKGROUND

Plaintiff alleges disability from a series of physical and mental impairments, including obesity, type II diabetes, high blood pressure, acrochordon, pancreatic insufficiency, hypercholesterolemia, insomnia, recurrent major depression, attention deficit disorder, and anxiety. (Doc. No. 25, Pl.'s Mem. of Law in Supp. of a Mot. for Summ. J. ("Pl.'s Br.") 2; Tr. 302.)[2] He asserts a disability onset date of April 30, 2016. (Pl.'s Br. 2; Tr. 303.) On July 26, 2018, Plaintiff applied for disability insurance and SSI benefits under title XVI of the Social Security Act. (Tr. 10; 257–62; 263–69.) The Social Security Administration ("SSA") denied Plaintiff's application on September 11, 2018, and again on reconsideration on January 14, 2019. (Tr. 113–14, 168–69.) Plaintiff requested a hearing, and a hearing before an Administrative Law Judge ("ALJ") was held on January 6, 2020. (Tr. 42–73.)

On January 29, 2020, the ALJ issued his decision; in it, he conducted the requisite five-step evaluation under 20 C.F.R. § 404.1520.[3] (Tr. 7–32.) At step one, the ALJ

---

[2]   Throughout this Memorandum Opinion and Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 12.) Referenced numbers refer to the Bates label in the bottom right corner of the record.

[3]   The ALJ must conduct a five-step evaluation to determine whether a claimant qualifies as "disabled." At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's RFC. At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of his past work. And at step five, the ALJ determines whether the claimant
(Footnote Continued on Next Page)

concluded that Plaintiff had not engaged in substantial gainful activity since April 30, 2016. (Tr. 13.) At step two, the ALJ determined that Plaintiff had the following severe impairments: generalized anxiety disorder, mood disorder, attention deficit hyperactivity disorder, diabetes mellitus with neuropathy, morbid obesity, and hypertension. (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14–16.)

Before step four, the ALJ concluded that Plaintiff had a residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c) except could only occasionally climb ladders, ropes or scaffolds; could only occasionally climb stairs or ramps; could frequently stoop and crouch; could have only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles, or exposure to unprotected heights; was limited to the performance of simple, routine, and repetitive tasks, and limited to work in a low-stress environment defined as requiring only occasional decision-making and only occasional changes in work setting as well as limited to only occasional interaction with the public and co-workers. (Tr. 16–25.) Medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) means work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

---

can do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520.

Having determined Plaintiff's RFC, the ALJ moved to step four where he concluded that Plaintiff's past relevant work as a regional manager at Domino's constituted substantial gainful activity but that his RFC precluded that work. (Tr. 25.) At step five, the ALJ concluded that Plaintiff had the RFC to perform work with medium exertion, including "Kitchen Helper," "Hospital Cleaner," and "Janitor." (Tr. 25–26.) Based on the above findings, the ALJ concluded that Plaintiff was not disabled under the Social Security Act and denied his application. (Tr. 27.) The Social Security Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6); 20 C.F.R. § 404.981. Plaintiff then filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.)

## DISCUSSION

### I. Standard of Review

The Commissioner's decision will be upheld if the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (citations omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). In

other words, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005). The whole record is considered, including "evidence that supports as well as detracts from the Commissioner's decision," and the Court will not reverse simply because some evidence may support the opposite conclusion. *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). If it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings," the Commissioner's decision must be affirmed. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

**II.     Analysis**

On appeal, Plaintiff argues that the ALJ did not properly consider his obesity when evaluating the physical limitations for his RFC and improperly weighed the medical opinions when considering the limitations for his RFC. In addition, Plaintiff argues the ALJ's decision is constitutionally defective.

**A.     Consideration of Plaintiff's Obesity**

Plaintiff argues the ALJ failed to properly consider his obesity when formulating his RFC's physical limitations. Specifically, Plaintiff argues the ALJ did not sufficiently evaluate his obesity under Social Security Ruling ("SSR") 19-2p, which requires the SSA to consider obesity at three steps of its analysis. *See generally* Titles II & XVI:

Evaluating Cases Involving Obesity, SSR 19-2P (SSA May 20, 2019), 2019 WL 2374244. Those three steps include step two (determining whether obesity is a severe impairment), step three (determining whether that severe impairment of obesity equals a listing), and before step four (determining how obesity affects a claimant's RFC).[4] *See id.*

At step two, the ALJ determined that Plaintiff suffered from a "severe" impairment of obesity. Both parties agree with this finding. Indeed, the medical record is filled with evidence that Plaintiff suffers from severe obesity. From 2016 to 2019, Plaintiff's body mass index ("BMI") ranged from 39 to 45, with most exams showing a BMI of 43 or higher. (Tr. 580, 585, 607, 612, 617, 622, 628, 636, 640, 642, 676, 685, 690, 696, 701, 706, 728, and 731.) Past SSA guidance has recognized that a BMI of 40 or higher represents the most extreme obesity and presents "the greatest risk for developing obesity-related impairments." Titles II & XVI: Evaluation of Obesity, SSR 02-1P (SSA Sept. 12, 2002). Moreover, every physical medical opinion on record acknowledged Plaintiff suffered functional limitations from his severe obesity and advised that Plaintiff be limited to less than medium work. (Tr. 93–141, 626, 657–62.) In addition, Dr. Todd Holcomb, Plaintiff's treating physician, created a treatment plan, dated September 28, 2018, which included a visit to the Ridgeview Bariatric Program, which Plaintiff attended and ultimately left concerned about surgery. (Tr. 677, 688.) Bariatric surgery is a

---

[4]   Social Security Ruling (SSR) 19-2p applies to all Social Security applications filed on or after May 20, 2019, and to all claims pending before the agency on or after that date. SSR 19-2p, 2019 WL 2374244, at *5 n.14. Because Plaintiff's hearing took place on January 6, 2020, and the ALJ issued the decision on January 29, 2020, after SSR 19-2p's effective date, SSR 19-2p applies.

procedure "performed on people who are dangerously obese, for the purpose of losing weight." *Kennedy v. Astrue*, 853 F. Supp. 2d 914, 918 (W.D. Mo. 2012). Finally, in his Function Report and at the hearing, Plaintiff reported that his severe obesity made it difficult for him to do many physical activities, including standing, lifting, walking, and sitting. (Tr. 51–60, 320–45.)

Since the parties agree with the ALJ's determination that Plaintiff's morbid obesity is severe under step two, and since the ALJ's determination at step three is not at issue, the Court turns to whether the ALJ properly considered Plaintiff's severe obesity in formulating Plaintiff's RFC. Social Security Ruling 19-2p guides the ALJ at this step:

> *6.     How do we consider obesity in assessing a person's RFC?*
>
> We must consider the limiting effects of obesity when assessing a person's RFC. RFC is the most an adult can do despite his or her limitation(s). As with any other impairment, we will explain how we reached our conclusion on whether obesity causes any limitations.
>
> A person may have limitations in any of the exertional functions, which are sitting, standing, walking, lifting, carrying, pushing, and pulling. A person may have limitations in the nonexertional functions of climbing, balancing, stooping, kneeling, crouching, and crawling. Obesity increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities. Obesity may also affect a person's ability to manipulate objects, if there is adipose (fatty) tissue in the hands and fingers, or the ability to tolerate extreme heat, humidity, or hazards.
>
> We assess the RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment. People with an MDI of obesity may have limitations in the ability to sustain a function over time. In cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity. This may be particularly true in cases involving obesity and sleep apnea.

> The combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately. For example, someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to the arthritis alone. We consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments.

SSR 19-2p, 2019 WL 2374244, at *4. Plaintiff contends that the ALJ failed to follow this guide when he determined that Plaintiff could perform medium work, except that he could (1) only occasionally climb ladders, ropes, scaffolds, stairs, or ramps; (2) frequently stoop and crouch; and (3) have only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles or exposure to unprotected heights.

The ALJ must "establish *by medical evidence* that the claimant has the requisite RFC," and explain how that medical evidence shows how a claimant has the "ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (emphasis added). Here, in formulating Plaintiff's RFC's physical limitations, the ALJ repeatedly cited Plaintiff's "normal gait." (Tr. 19–20, 23.) But the ALJ did not cite any medical evidence demonstrating how Plaintiff—with his severe morbid obesity and other medical conditions—could *ever* climb ladders, ropes, and scaffolds or *ever* be in a work environment where he is exposed to hazards. *See, e.g.*, *Benjamin J.B. v. Comm'r of Social Sec.*, No. 3:20-cv-00608 (MAB), 2021 WL 4318119, at 8* (S.D. Ill. Sept. 23, 2021) (observing that the "huge thrust of the ALJ's RFC determination seem[ed] to be based on his belief that [the] [p]laintiff could move, as

8

he describes without much difficulty" warranted remand for lack of a logical bridge to limitations due to the plaintiff's obesity). The ALJ also did not create a "logical bridge" between the evidence and his conclusions, specifically between Plaintiff's normal gait and an ability to climb ladders, ropes, scaffolds and be occasionally exposed to hazards.[5] *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019).

Instead, the ALJ repeatedly relied on the lack of medical observations and evidence to support his RFC determination. (Tr. 19–24.) For example, in rejecting opinions from State agency consultants[6] that Plaintiff could only perform less than medium work and *never* climb ladders/ropes/scaffolds, the ALJ cited the lack of evidence showing "diminished strength or range of motion" and the lack of observations of "impaired upper extremity functioning, grip or hand dexterity." (Tr. 23, 93–135; 626, 657–63.) In addition, without any medical evidence, the ALJ rejected Dr. Menge's opinion that Plaintiff should "[a]void all exposure" to hazards. (Tr. 23, 106.) The ALJ

---

[5] The two "normal gait" cases relied on by Defendant are unpersuasive. In *Jeffrey C. v. Berryhill*, obesity was not the central issue and was not determined to be a severe impairment. No. 17-cv-5366 (ECT/HB), 2018 WL 7075203, at *2–3 (D. Minn. Dec. 21, 2018), *report and recommendation adopted*, No. 17-CV-05366 (ECT/HB), 2019 WL 251512 (D. Minn. Jan. 17, 2019). Instead, the observation that the plaintiff had an "appropriate gait" went to the extent of the plaintiff's back impairment, not the plaintiff's obesity. *Id.* Similarly, in *Thornhill v. Colvin*, obesity was not the central issue and was not determined to be a severe impairment. No. 4:12–cv–1150 (CEJ), 2013 WL 3835830, at *12 (E.D. Mo. July 24, 2013) (unpublished). The observation that the plaintiff had a "normal independent gait" did not factor into an analysis of a plaintiff suffering from severe obesity. *Id.*

[6] The State agency consultants were Dr. Peter Menge and Dr. Mangala Hasanadka.

also rejected the opinions of Plaintiff's treating physician, Dr. Holcomb by highlighting the lack of evidence:

> [T]here has been no observation of diminished strength, imbalance or joint instability. Further there has been no substantive work up for back, hip, knee or foot pain, or other diabetic foot exam revealing some decreased sensation. The record also lacks actual observations of diminished breathing or dyspnea on exertion.
>
> . . . .
>
> There has been no substantive evidence of reduced strength, reduced grip, impaired hand dexterity, limited range of motion, imbalance or joint instability. In fact, even with considerable extra weight, there has been no objective evidence of back, hip, knee or foot pain, other than diabetic neuropathy pain.

(Tr. 23–24.)

But the lack of a record is not sufficient to support Plaintiff's RFC's physical limitations. More is needed. The ALJ needed to consider input by medical professionals who had evaluated Plaintiff's obesity. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (concluding that "the ALJ was required to consider at least some supporting evidence from a professional" when evaluating the plaintiff's RFC); *see also Hulen v. Astrue*, 909 F. Supp. 2d 1065, 1072 (S.D. Iowa 2012) (reasoning under the preceding SSR 02-1p that the plaintiff's medical issues regarding obesity "require[d] input by medical professionals). That input, in turn, needed to include observations under SSR 19-2p regarding how Plaintiff's obesity affected Plaintiff's exertional and non-exertional functions; increased stress on Plaintiff's individual's weight-bearing joints; affected Plaintiff's ability to manipulate objects; affected Plaintiff's ability to tolerate extreme heat, humidity, or hazards; and affected Plaintiff's physical and mental ability to sustain

work activity. *See* SSR 19-2p, 2019 WL 2374244, at *4. The ALJ did not sufficiently consider these medical observations.

The ALJ also did not consider, under SSR 19-2p, the "combined effects of obesity" with other impairments. SSR 19-2p, 2019 WL 2374244, at *4. Though the ALJ noted Plaintiff's severe obesity was complicated by his hypertension and diabetes with neuropathy, the ALJ did not point to any medical evidence observing how this complication affected Plaintiff's ability to function other than that Plaintiff appeared "intact."[7] (Tr. 23.) Thus, the combination of Plaintiff's severe obesity combined with severe peripheral neuropathy and fatigue was not sufficiently addressed.[8] *See*, *e.g.*, *Reed v. Astrue*, 557 F. Supp. 2d 985, 1004 (N.D. Iowa 2008) (remanding in part because the ALJ failed to consider how the plaintiff's obesity combined with the plaintiff's sleep apnea affected her RFC).

Because the record was lacking, the ALJ had a duty to develop the record to properly evaluate the functional limitations of obesity in formulating Plaintiff's RFC, including Plaintiff's ability to perform medium work with occasional climbing of ladders,

---

[7]     One such piece of medical evidence was Dr. Holcomb's treatment notes dated October 3, 2019. In those notes, Dr. Holcomb discussed how Plaintiff's neuropathy had "gradually gotten worse since 2016" and that a "sensory exam of the foot was abnormal." (Tr. 683–86.) But despite this observation, the ALJ did not sufficiently explain how this complication did or did not affect Plaintiff's ability to function.

[8]     Additionally, SSR 19-2p notes that fatigue may affect a person's physical and mental ability to sustain work activity, particularly in cases involving obesity and sleep apnea. SSR 19-2p, 2019 WL 2374244, at *4. Here, the ALJ's decision and the record lacks discussion about how Plaintiff's sleep apnea and his severe obesity contributed to Plaintiff's fatigue issues.

11

scaffolds, and ropes and occasional exposure to hazards. *See Snead v. Barnhart*, 360 F.3d 834, 836 (8th Cir. 2004) (reversing and remanding where the ALJ failed to develop the record); *see also McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (recognizing that an ALJ has "a duty to develop the record");[9] *Webb v. Berryhill*, 294 F. Supp. 3d 824, 879–80 (D.S.D. March 5, 2018) ("[I]f no evidence exists in the record regarding functional limitations from obesity and [other] impairments, the ALJ should obtain medical evidence regarding that issue."); *Hulen,* 909 F. Supp. 2d at 1072 (remanding for the Commissioner to develop the record about the plaintiff's obesity). Because the record must be developed, the case will be remanded for further consideration of Plaintiff's severe obesity—and his obesity in combination of other impairments—consistent with SSR 19-2p.

On remand, the ALJ can develop the record in several ways. The ALJ may request medical records in existence but not yet part of the administrative record or request a consultative exam.[10] 20 C.F.R. § 404.1512; *see also Webb*, 294 F. Supp. 3d at 884 (finding consultative examination warranted to determine how obesity affects the

---

[9] The duty to develop the record arises only when a "crucial issue" is "undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Here, Plaintiff's obesity was a crucial issue regarding his disability.

[10] Dr. Holcomb may be helpful here. Dr. Holcomb opined in his November 22, 2016 opinion that Plaintiff "should not be up for more than hour at a time and a maximum of total 4 hours on his feet during a workday." (Tr. 626.) Dr. Holcomb also opined in a July 12, 2018 Medical Source Statement that Plaintiff had "difficulty standing & sitting for long periods." (Tr. 662.) These opinions demonstrate that Dr. Holcomb may be of assistance in developing the record as to Plaintiff's physical limitations.

plaintiff's ability to function in the workplace when the records relied on by the ALJ inadequately assess that issue). A consultative examination appears warranted here because the records relied on by the ALJ, like in *Webb*, inadequately assess the issue of Plaintiff's obesity. *Webb*, 294 F. Supp. 3d at 884. Thus, the Court orders the ALJ to consider ordering a consultative examination so that a physician can access all of Plaintiff's medical records and fully examine Plaintiff's physical abilities so as to make the necessary observations for the ALJ to make an informed decision supported by substantial evidence on the record, consistent with SSR 19-2p. The ALJ then must also reconsider the medical opinions of Dr. Menge, Dr. Hasanadka, and Dr. Holcomb through the lens of a developed record.[11]

### B. Consideration of Plaintiff's Mental Limitations

Plaintiff also argues that the ALJ improperly weighed the medical opinions when considering his mental limitations. Here, the weight assigned to medical opinions is governed by 20 C.F.R. § 404.1520c. Under this regulation, the ALJ considers all medical opinions according to five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors; the ALJ must explain how those two factors were considered in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2).

---

[11] Because the Court's order of remand includes reconsideration of the medical opinions relating to Plaintiff's physical limitations, the Court does not address Plaintiff's separate argument that the opinions about Plaintiff's physical limitations were improperly weighed.

The ALJ rejected several medical opinions about Plaintiff's mental limitations because he did not find them consistent with the record. The ALJ concluded that Plaintiff was limited to the performance of simple, routine, and repetitive tasks, and limited to work in a low-stress environment defined as requiring only occasional decision-making and only occasional changes in work setting as well as limited to only occasional interaction with the public and co-workers. (Tr. 16–25.) The Court finds that the ALJ adequately articulated why these opinions were inconsistent with the record. The Court also finds that substantial evidence supports the portion of the RFC concluding that Plaintiff was limited to the performance of simple, routine, and repetitive tasks, and limited to work in a low-stress environment defined as requiring only occasional decision-making and only occasional changes in work setting as well as limited to only occasional interaction with the public and co-workers.

C.  **Plaintiff's Constitutional Challenge**

In addition to arguing the ALJ's analysis is flawed regarding his mental and physical limitations, Plaintiff also argues this case should be remanded because 42 U.S.C. § 902(a)(3) violates the separation of powers and thus the SSA's structure is unconstitutional. (Pl.'s Br. 17–19 (citing *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020)).) But because the Court is already remanding the matter, the Court need not take any position on the merits of Plaintiff's constitutional separation-of-powers challenge. Moreover, to the extent that Plaintiff argues the ALJ was biased, the Court rejects Plaintiff's argument. To show bias, a Plaintiff must show that an ALJ's behavior "in the context of the whole case, was so extreme as to display clear inability to render fair

judgment." *Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011) (quotations omitted). Plaintiff has not made a showing that the ALJ's behavior rose anywhere close to this level.

## ORDER

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 24) be **GRANTED IN PART** and **DENIED IN PART**;

2. Defendant's Motion for Summary Judgment (Doc. No. 29) be **DENIED;**

3. This matter is remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four), consistent with this Memorandum Order and Opinion regarding the ALJ's determination that Plaintiff's RFC included performing medium work except for he could only occasionally climb ladders, ropes or scaffolds; could only occasionally climb stairs or ramps; could frequently stoop and crouch; and could have only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles, or exposure to unprotected heights. On remand, the ALJ must:

   a. Determine whether the relevant information needed to evaluate Plaintiff's severe obesity—and severe obesity in combination of Plaintiff's fatigue and peripheral neuropathy—in accordance with SSR 19-2p can be obtained from Plaintiff's treating physician and/or existing medical records that are not part of the record;

   b. If the relevant information about Plaintiff's obesity cannot be obtained from Plaintiff's treating physician or other existing medical records that are not part of the record, the ALJ must consider whether to obtain a consultative

  physician(s) who will have access to all of Plaintiff's medical records and who can examine Plaintiff so as to make the necessary physical observations for the ALJ to make an informed decision supported by substantial evidence on how Plaintiff's obesity effects his work functionality under SSR 19-2p.

c. With a more developed record, the ALJ must also reconsider the medical opinions of Drs. Menge, Hansanadka, and Holcomb regarding Plaintiff's physical limitations that were rejected for the lack of evidence. The ALJ must then redetermine Plaintiff's RFC and make new findings based on that RFC at steps four and five of its analysis.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: March 7, 2022       *s/ Becky R. Thorson*
               BECKY R. THORSON
               United States Magistrate Judge